ALLAUN et al. v. GLEN BROOK COAL CO.

(Circuit Court of Appeals, Third Circuit. November 29, 1915.)

No. 1978.

EVIDENCE ☞357—ADMISSIBILITY—CORRESPONDENCE BETWEEN PARTIES.

Defendants, who constituted a committee appointed by creditors of a corporation engaged in the performance of a government contract, ordered coal from plaintiff for the use of the company. *Held*, in an action to recover from defendants a balance due for such coal, that letters passing between the parties were properly admitted in evidence as bearing on the question whether defendants purchased the coal on their own credit or merely as agents for the company.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1492–1499; Dec. Dig. ☞357.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by the Glen Brook Coal Company against Maurice Allaun and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Thomas McConnell, Jr., Harry S. Mesirov, and Henry M. Du Bois, all of Philadelphia, Pa., for plaintiffs in error.

George W. Harkins, Jr., and Howard H. Yocum, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

PER CURIAM. In this suit the Glen Brook Coal Company sought to establish the individual liability of the defendants for coal furnished to the Atlantic Dredging Company under two agreements, one of them made in July, 1911, and the other in March, 1913. The only defense was that the defendants were acting in a representative character, and that the agreements were entered into on behalf of the Dredging Company. This issue was submitted to the jury, and the verdict was in favor of the plaintiff. There is no assignment of error to the charge, and in this court we must accept the verdict as determining the question of liability against the defendants. The only point now open, therefore, is whether any harmful error was committed during the trial, and in this respect no complaint is made except concerning the admission of several letters. The question presented will be made clear by a brief outline of the facts.

In September, 1910, the Dredging Company (which was carrying

out a contract with the United States) became financially embarrassed, and its .condition was considered at a creditors' meeting. The creditors proposed and the company agreed that a committee of three cred-.itors should be appointed, with the following powers and duties, inter alia:

"The business of said Atlantic Dredging Company shall be conducted· by its officers and directors under the supervision and advice of said committee until such time as this agreement may be discontinued under its terms. All moneys received must be deposited in the name of this committee and, disbursed by them.

"All claims and expenses arising hereafter shall be promptly paid in full from current receipts, and from the balance of said receipts, if any, the committee shall declare dividends to all creditors of said Atlantic Dredging Company as rapidly as in their judgment the circumstances will justify."

The committee entered upon its duties, but the extent of its activity is not very definitely proved. In the summer of 1911 a contract was made by members of the committee with the Glen Brook Coal Company—which was not a creditor of the Dredging Company—and coal was delivered thereunder at intervals until November 23d. At that date a balance of about $400 remained unpaid, and. letters in reference to this ·balance were exchanged between the Coal Company and the committee at frequent intervals from December 28, 1911, to February 21, 1913. The following letters are fair examples of the tone and scope of the correspondence:

"April 23, 1912.

"Mr. T. W. Miller, Chairman, Committee of Creditors, Atlantic Dredging Company—Dear Sir: Under date of the 13th instant we took the liberty of again calling your attention to our account, amounting to $392.40, for coal furnished during September and November, 1911, but up to this time have had no response from you. We will be glad to have you advise us as promptly as possible when we may expect to receive a remittance to cover this.

"Very truly yours,                    E. M. Ramsey, Jr.,

"Secretary and Treasurer."

"Wilmington, Del., April 24, 1912.

"Glen Brook Coal Company, Philadelphia, Pa.—Gentlemen: I beg to acknowledge receipt of your favor of the 23d and also letter of the 13th, and have not answered same, as we have been waiting every day to have the government give us some notice of release from our contract and pay us the balance due on contract as well as for work that we have executed during the months of March and April. Up to this date we have had no acceptance, but simply have had more work put on us, and I have a letter from one of the committee to-day in which he states that he hopes within the next week matters will be in such shape that the release will be made possible. We have not had one cent of money from the government since last December and this committee has had to finance the whole operation out of our own pockets up to· the present time, consequently we are not in shape to hand you any money. The writer assured you that everything possible will be done looking towards paying this claim just as soon as we get funds, and it will be utterly useless for you to sue or get judgment, inasmuch as same could not be executed, for the reason that the government holds a prior claim on the outfit until the contract is completed, and it would only put unnecessary expense on the account. I am willing to be perfectly frank with you in this matter, as we are doing our very best to carry out the contract in accordance with the desires of the creditors' committee and as we are being forced to do by the government.  *  *  *

"Yours very truly,                    T. W. Miller."

In March, 1913, a second contract was entered into, under which deliveries were made until July of that year, when further performance was abandoned by mutual consent, a balance of about $3,600 remaining unpaid.

At the trial the correspondence referred to was offered in evidence, the letter of December 28th being admitted to prove "notice that the plaintiff expected to hold the committee liable," and the whole series being finally admitted "as bearing on the first shipment only." At the close of the plaintiff's case its counsel asked that the letters might be considered by the jury "with respect also to the second contract, so far as they may throw light upon the manner of dealing"; but this request was not passed upon by the court, either then or afterward. Neither side asked for instructions on this subject, and the remarks in the charge concerning the correspondence must in fairness be taken as applying to the letters in their relation to the first contract only. Their admission being the single· error insisted upon, we think it enough to say that after reading them with care we are unable to hold that the District Court was wrong. While the correspondence might easily have been more definite, and while some of the letters are susceptible of two interpretations, we think their bearing upon the issue, as far as the first contract is concerned, was a proper subject for the jury to consider. They were to be read in the light of all the circumstances, and it was for the jury to determine whether they showed a claim by the plaintiff that the committee was individually responsible, and (if so) how far such a claim called for denial.

The second contract depended mainly upon conflicting oral testimony, and upon this matter the verdict is final. If the defendants have any justifiable ground of complaint, it lies against the verdict (which is beyond our power) rather than against the rulings of the trial judge.

The judgment is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes